DLD-098 **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3723
_____

PAUL J. BEGNOCHE, SR.,
Beghoche a/k/a Begnoche
also known as
Paul J. Beghoche, Sr.

v.

WARDEN D.L DEROSE; J.T. HASTE, Full Prison Board Commission Chairman;
MICHAEL H.W. PRIES; FRANK J. LAVERY, JR., Board Solicitor;
DPTY WARDEN ELIZABETH NICHOLS; JOHN ADISON, Coordinator
REBECCA VENNERI, Coordinator; TIM CZERDA, CSL; LUCAS, Case Worker;
CHAPLAIN FIELDS; WILLIAM T. TULLY, Dauphin County Solicitor;
DEPUTY WARDEN CARROLL; MAILROOM SUPERVISOR
JANE/JOHN DOE; FIRST SHIFT COMMANDER JOHN DOE; FIRST SHIFT
"B" BLOCK CORRECTIONAL OFFICER JOHN DOE; SECOND SHIFT "E"
BLOCK CORRECTIONAL OFFICER JANE DOE

Paul J. Begnoche, Sr.,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-12-cv-01057)
District Judge:  Honorable Richard P. Conaboy
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 12, 2017

Before:  CHAGARES, VANASKIE, and KRAUSE, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 26, 2017)
_____

OPINION[*]
_____

PER CURIAM

Paul J. Begnoche, Sr. appeals from the judgment of the United States District Court for the Middle District of Pennsylvania.  We will summarily affirm.

I.

Because we write primarily for the parties, who are familiar with the background of this case, we describe its history only briefly.  In June 2012, Begnoche, a prisoner confined at SCI-Mercer, filed a complaint pursuant to 42 U.S.C. § 1983 against various officials at his former place of confinement, the Dauphin County Prison.  Begnoche alleged that prison officials prevented him from exercising his Native American religious beliefs, including celebrating the Green Corn Feast,[1] that prisoners of non-Christian faiths are provided disparate treatment, that prison staff tampered with his legal correspondence, and that the prison grievance system was inadequate.  Begnoche sought compensatory and punitive damages as well as injunctive relief.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] As the District Court explained, the Green Corn Feast is an annual ceremony practiced by Native Americans which typically occurs in the late summer and is related to the ripening of the corn crops.  The celebration involves fasting and a special feast.

In February 2013, Begnoche filed a motion to amend his complaint. The District Court granted Begnoche's motion, allowing him to file "a single all inclusive amended complaint solely regarding the allegations set forth in the Original Complaint." Begnoche subsequently filed three separate documents, which the District Court construed as the amended complaint and a memorandum in support thereof. The amended complaint reasserted Begnoche's earlier claims but also included proposed supplemental allegations that he was subjected to unconstitutional conditions of confinement at both the Dauphin County Prison and SCI-Camp Hill.

In April 2013, the defendants filed a motion to dismiss for failure to state a claim. By order entered on February 28, 2014, the District Court dismissed Begnoche's request to pursue supplemental claims without prejudice, and dismissed all claims and several defendants with the exception of the allegations that remaining defendants Deputy Warden Elizabeth Nichols, Coordinator John Adison, and Chaplain Fields violated Begnoche's right to exercise his religious beliefs under the First Amendment.[2] The

---

[2] Upon review of the District Court's ruling, we conclude that the District Court properly granted dismissal with regard to Begnoche's supplemental claims, see, e.g., Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983) (holding that court may refuse to allow amendment that fails to state cause of action); several of the named defendants for lack of personal involvement, see, e.g., Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that plaintiff must allege that defendant was personally involved in deprivation); see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (holding that liability under § 1983 may not be based solely on doctrine of respondeat superior); the unnamed John/Jane Does, see, e.g., Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998) (holding that fictional parties must be dismissed if discovery has failed to yield their identities); his access to the courts claim, see, e.g., Lewis v. Casey, 518 U.S. 343, 351

District Court also deemed the claims against prison counselor Tim Czaja withdrawn because although Begnoche mentioned Czaja in the body of the amended complaint, he failed to include him in the "list of all defendants." Thereafter, Begnoche filed a motion for reconsideration, requesting, among other things, that his failure to include Czaja in the list of defendants be deemed harmless, and that his claims against all defendants should proceed. The District Court granted the motion in part, allowing Begnoche's claims that Czaja and prison counselor Rebecca Venneri interfered with the exercise of his religious beliefs to advance.

In September 2014, Nichols, Adison, and Fields filed a motion for summary judgment, and in September 2015, Czaja filed a separate motion for summary judgment. The District court granted both motions, determining that Nichols, Adison, and Fields made a reasonable attempt to assist Begnoche in the exercise of his religious beliefs, and that Czaja and Venneri acted in a reasonable manner during counseling and had not prevented Begnoche from exercising his individual religious beliefs. Begnoche appeals.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Because Begnoche has been granted in forma pauperis status pursuant to 28 U.S.C. § 1915, we review this appeal for

_____

(1996) (holding where inmate does not allege actual injury to his ability to litigate claim, constitutional right to access courts has not been violated); his lack of response to grievances claim, see, e.g., Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."); his conspiracy claim, see, e.g., Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) ("[T]o properly plead an unconstitutional conspiracy, a

possible dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). We may summarily affirm under Third Circuit LAR 27.4 and I.O.P. 10.6 if the appeal lacks substantial merit. We exercise plenary review over a district court order for summary judgment. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1), (e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

We agree with the District Court that summary judgment was appropriate with regard to Begnoche's claim that Nichols, Fields, and Adison interfered with his right to exercise his religious beliefs in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. Specifically, Begnoche claimed that defendants failed to provide him with a Native American spiritual advisor and religious items and denied him a special religious meal during the Green Corn Feast celebration.

plaintiff must assert facts from which a conspiratorial agreement can be inferred.").

Prisoners have a First Amendment right to practice their religion.  Bell v. Wolfish, 441 U.S. 520, 545 (1979).  However, this constitutional right is limited by valid penological objectives.  O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (finding "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security").  When alleged religious interference stems from a prison policy, the Supreme Court has outlined four factors that are relevant in determining the reasonableness of the regulation: (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest"; (2) whether the inmate has an "alternative means of exercising the right" at issue; (3) the burden that the accommodation would impose on prison resources; and (4) "the absence of ready alternatives."  Turner v. Safley, 482 U.S. 78, 89-91 (1987).

Here, while there was an initial four-month period where Begnoche was without access to a spiritual advisor, he was ultimately provided with one.  The record demonstrates that immediately following Begnoche's arrival at Dauphin County Prison in July 2010, he met with Chaplain Lutz, who ascertained Begnoche's religious needs and began searching for a Native American spiritual advisor.  Because the prison is financially limited in providing chaplaincy services to inmates of different faiths, it has a policy of relying on volunteer spiritual advisors to conduct worship services.  In October 2010, Cheryl Germer agreed to be Begnoche's spiritual advisor, meeting initially with him weekly and subsequently reducing her visits to bi-weekly in October 2011 due to

6

work obligations. While Germer canceled worship services twice in 2011, and Begnoche was denied attendance on one occasion due to a security lock down on his cell block, Germer states in her uncontested affidavit that the religious services and resources Begnoche was provided with while at the prison did not impact or restrict his ability to worship and practice his Native American spirituality.[3] Moreover, as the District Court explained, the policy of Dauphin County Prison to rely on volunteer chaplaincy services was not a violation of Turner. Rather, the prison's search for a suitable spiritual advisor constituted a reasonable alternative accommodation. See Turner, 482 U.S. at 90-91.[4]

We further agree with the District Court's conclusion that the record did not support Begnoche's assertions that he was not permitted to celebrate the Green Corn Feast or partake in a special feast tray. Begnoche was permitted to observe the Green Corn Feast twice during his confinement. Chaplain Lutz made special arrangements for Begnoche to observe the celebration on October 15, 2010, which consisted of a special

---

[3] In December 2011, Begnoche was released from Dauphin County Prison into the custody of the Pennsylvania Department of Corrections. Shortly thereafter, Germer discontinued volunteering as a Native American spiritual advisor at the Dauphin County Prison due to a change in work location. On March 16, 2012, Begnoche was recommitted to Dauphin County Prison. After he arrived, Chapain Lutz again attempted to locate a Native American spiritual advisor but was unable to do so. However, Begnoche was permitted to privately and independently practice his Native American spiritual beliefs through prayer and worship.

[4] Begnoche's claim that he was denied religious items is equally without merit and was appropriately disregarded by the District Court. The record shows that Begnoche was given several booklets relating to his Native American beliefs, and Germer's affidavit states that she was permitted to bring handouts, cassette tapes, five prayer feathers, and a drum and beater stick into the prison to be utilized for the worship services.

7

meal tray and one hour of private worship.[5]  Defendants claim that Begnoche, despite

being instructed not to, ate a normal lunch tray on the day of the celebration.  As a result,

he was denied permission to have the special Green Corn Feast meal tray.  However,

defendants arranged for a special make-up Green Corn Feast on October 26, 2010, so that

Begnoche could observe the ceremony.  The following year, he celebrated the Feast

without incident.  Thus, Begnoche was given a reasonable opportunity to celebrate the

Green Corn Feast during his confinement at Dauphin County Prison.[6]

III.

We further conclude that summary judgment was proper with regard to

Begnoche's claims that Czaja and Venneri verbally harassed him during therapeutic

community (TC) group counseling and engaged in conduct which interfered with the

exercise of his religious beliefs.

It is well-settled that verbal abuse does not give rise to a constitutional violation

under § 1983.  See Wyatt v. Fletcher, 718 F.3d 496, 504 (5th Cir. 2013); McBride v.

---

[5] Begnoche also seeks relief on the basis that his celebration of the Green Corn Feast was in private.  However, he has provided no support for the claim that his beliefs required a group celebration.

[6] With regard to Begnoche's RLUIPA claim, we agree with the District Court that RLUIPA does not permit an action against defendants in their individual capacities.  See Sharp v. Johnson, 669 F.3d 144, 153-55 (3d Cir. 2012).  Nor have the "States . . . consent[ed] to waive their sovereign immunity with respect to RLUIPA suits for damages against State employees in their official capacities."  Id. at 155 (citing Sossamon v. Texas, 131 S. Ct. 1651, 1655, 1660 (2011)).  Moreover, as Begnoche was no longer held at the Dauphin County Prison, the District Court properly rejected his claim for injunctive

Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973). However, words accompanied by physically intrusive behavior may amount to a constitutional violation. See Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992) (finding constitutional violation where guard put revolver to inmate's head and threatened to shoot).

The record shows that as part of the TC program, Begnoche was required to participate in "hot seat" group sessions, during which inmates received feedback from peers concerning their participation in the program. While Begnoche claimed that if inmates "didn't hold proper participation, they were badgered, or hazed, or reclassified off the [TC] Block," he failed to provide any factual support for this claim. Nor did he demonstrate that Czaja or Venneri had been personally involved in the purported harassment, see Rode, 845 F.2d at 1207, or allege that the verbal abuse was accompanied by any physically intrusive behavior.

Begnoche also failed to demonstrate that that TC program involved religious content or that Czaja or Venneri forced him to practice Christianity in violation of the Establishment Clause, or otherwise impaired his ability to practice his Native American beliefs. In determining whether governmental action violates the Establishment Clause, the Supreme Court has set forth a three-prong approach in Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971). A challenged action is unconstitutional if (1) it lacks a secular

relief as moot.

purpose; (2) its primary effect either advances or inhibits religion; or (3) fosters "an excessive government entanglement with religion." Id.

We agree with the District Court's conclusion, based on the undisputed record, that the Dauphin County Prison's TC program was both voluntary and secular. While the program did include a voluntary spiritual group aspect which was led by inmates, it did not constitute government endorsement of a specific religious belief. In his sworn declaration, Czaja stated that if an inmate did not want to discuss Christianity while in the program, he could simply refrain from participating in the inmate-led spiritual group, or could participate in the group and share his own religion and beliefs with other inmates. As a result, Begnoche has not demonstrated that Czaja or Venneri interfered with his ability to practice his Native American beliefs or required that he practice Christianity, and the District Court properly granted summary judgment on these claims.

IV.

Because the appeal does not present a substantial question, we will summarily affirm the judgment of the District Court.